















CGL   8/4/04   10:08

3:04-CV-01143   AL RAWI V. TITAN CORPORATION

*12*

*STMT.*

1  William J. Aceves (CA Bar # 151031)
   225 Cedar Street
2  San Diego, CA  92101
   (619) 515-1589
3  Counsel for Plaintiffs

FILED

04 JUL 30 PH 4: 09

CLERK, U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

4

## IN THE UNITED STATES DISTRICT COURT

5

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

6                                                        BY FACSIMILE

7  SALEH, an individual; SAMI ABBAS AL RAWI,      )  Case No. '04  CV 1143  R (NLS)
   an individual; MWAFAQ SAMI ABBAS AL            )
8  RAWI, an individual; AHMED, an individual;     )  **CLASS ACTION**
   ISMAEL, an individual; NEISEF, an individual;  )
9  ESTATE OF IBRAHIEM, the heirs and estate of an )
   individual; RASHEED, an individual; JOHN DOE   )
10 NO. 1; JANE DOE NO. 2; CLASSES OF              )  **PLAINTIFFS' RICO CASE**
   PERSONS SIMILARLY SITUATED, KNOWN              )  **STATEMENT FILED PURSUANT**
11 HEREINAFTER AS JOHN and JANE DOES NOS.         )  **TO LOCAL RULE 11.1**
   3 – 1050,                                      )
12                                                )
        Plaintiffs,                               )  **FILED BY FACSIMILE**
13                                                )
   v.                                             )
14                                                )
   TITAN CORPORATION, a Delaware Corporation;     )
15 ADEL NAKHLA, a Titan employee located in Abu   )
   Ghraib, Iraq; CACI INTERNATIONAL INC., a       )
16 Delaware Corporation; CACI INCORPORATED –      )
   FEDERAL, a Delaware Corporation; CACI N.V., a  )
17 Netherlands corporation; STEVEN A.             )
   STEFANOWICZ, a CACI employee located in Abu    )
18 Ghraib, Iraq; and JOHN B. ISRAEL, a Titan      )
   subcontractor located in Abu Ghraib, Iraq,     )
19                                                )
                                                  )
20      Defendants.                               )

21        Plaintiffs hereby file their initial RICO Case Statement pursuant to Local Rule 11.1.

22

23

24

25

26

27

28

ORIGINAL

RICO CASE STATEMENT                                Case No. 04cv1143 R (NLS)

**RESPONSES**

1.  **State whether the alleged unlawful conduct is in violation of 18 U.S.C. 1962(a), (b), (c), and/or (d).**

Defendants' unlawful conduct violates subsections (a), (c) and (d) of 18 U.S.C. § 1962. Plaintiffs believe additional discovery and investigation may reveal that Defendants' unlawful conduct also violates subsection (b) and respectfully reserves the right to supplement this RICO Case Statement upon the completion of discovery relating to subsection (b).

2.  **List the defendants and state the alleged misconduct and basis of liability of each defendant.**

<u>Titan Corporation</u> ("Defendant Titan") - Defendant Titan, acting through its employees, engaged in racketeering activity by participating in a conspiracy that kidnapped persons and repeatedly threatened to murder and harm persons being detained in prisons in Iraq. Plaintiffs also believe that discovery and further investigation will establish that Defendant Titan, acting through its employees, conspired to murder persons being detained in prison in Iraq and transported stolen property across state lines. Defendant Titan acted in Iraq through Defendants Adel L. Nakhla and John B. Israel, as well as Simon Rouhana, Wagdy Ashamalla, Hussein Gurashi, Bakeer Naseef, Khalid Omran, Al Sleem, Leonardo Acho, Hoger Sairany, Sonia Mohammed, Hana Korkis, Keirkan Hovsepian, Nesrin Dikow, Amal Hanna, Mervat Mousa, Nada Fradi, Issam Hamama, and Rauf Zeerak. Further discovery and investigation is needed to establish which of these persons and other as yet to be identified persons participated along with Adel Nakhla and John B. Israel in racketeering activity.

<u>Adel Nakhla</u>. Defendant Nakhla engaged in racketeering activity by personally participating in a conspiracy that kidnapped persons, and repeatedly threatened to murder and harm persons being detained in prisons in Iraq.

<u>John B. Israel</u>. Defendant Israel engaged in racketeering activity by participating in a conspiracy that repeatedly threatened to murder and otherwise harm persons being detained in prisons in Iraq.

1   CACI International, Inc., CACI Incorporated – Federal, CACI N.V. ("CACI Corporate

2   Defendants")  The CACI Corporate Defendants, acting through its employees, engaged in

3   racketeering activity by participating in a conspiracy that kidnapped persons and repeatedly

4   threatened to murder and harm persons being detained in prisons in Iraq.  In addition, Plaintiffs

5   believe that discovery and further investigation will establish that the CACI Corporate Defendants,

6   acting through its employees, conspired to murder and otherwise harm persons being detained in

7   prison in Iraq and transported stolen property across state lines.  The CACI Corporate Defendants

8   acted in Iraq through, among others, Peter Bilon, Jeff McCall, Ferdinand Ibabao, Harold Mong,

9   Michael Tutor, Allen West, Tyrone Gardner, Ken Powell, Mohammed Ali, Joseph Solin, Dan

10  Porvoznik, Mike Cahoon, Donald Hyde, John Blee, Mike Hensch, Luke Olander, Kevin

11  Bloodworth, Martin Meadows, James Mayo, Tim Dugan, Torin Nelson, Skylar Greco, Don

12  Simpson, Eric Fair, William Armstrong, Sean Duysen, Scott Norman, Mike Bagdasarov, Defendant

13  Steven Stefanowicz, C. James Albury,  Dan Johnson, Steve Hattabaugh, and Joseph Ryan.  Further

14  discovery and investigation will establish which of these persons in addition to Defendant Steven

15  Stefanowicz engaged in racketeering activity.

16      Steven A. Stefanowicz.  Defendant Stefanowicz engaged in racketeering activity by

17  participating in a conspiracy that kidnapped persons and repeatedly threatened to murder and

18  otherwise harm persons being detained in prisons in Iraq.

19      Basis for liability under RICO for Defendants:  Defendant Titan, CACI Corporate

20  Defendants, Defendant Stefanowicz, Defendant Israel, and Defendant Nakhla conspired with

21  certain United States officials to engage in a series of wrongful and illegal acts, including but not

22  limited to, kidnapping and repeatedly threatening murder and harm.

23      Defendants intentionally participated in this conspiracy and knowingly engaged in a pattern

24  and practice of wrongful acts in order to inflate artificially by these acts the demand for

25  interrogation and other related services such as interpretation and translation (collectively referred

26  to as "Interrogation Services").

27

28

1    Defendants profited from this artificially-inflated "supply" of "intelligence" because it

2    caused the United States to increase the demand for such services and direct additional government

3    contracts to Defendant Titan and CACI Corporate Defendants.

4    Each of the Defendants was the agent, employee and/or joint venturer, and/or working in

5    concert with, other Defendants and was acting within the course and scope of such agency,

6    employment and/or joint venture or concerted activity.  To the extent that any particular act was

7    perpetrated by a certain Defendant or Defendants, the remaining Defendant or Defendants

8    confirmed and/or ratified the same.

9    **3.  List alleged wrongdoers, other than the defendants listed above, and state the**

10   **alleged misconduct of each wrongdoer.**

11   Certain government officials (hereinafter included in the term "Torture Conspirators")

12   conspired with Defendants to engage in racketeering acts, including but not limited to threatening

13   murder and murder.  Among other acts, these government officials adopted and/or implemented

14   "Rules of Engagement" for Interrogations purporting to permit Interrogators to threaten detainees

15   with death.  These government officials adopted and/or implemented policies and practices that led

16   to detainees being kidnapped, tortured, threatened with death and bodily harm, physically and

17   mentally permanently disabled, and, in some cases, murdered.

18   Further discovery and investigation is needed to identify all of the conspiring government

19   officials, but they include Donald H. Rumsfeld, Douglas J. Feith, Major General Geoffrey D.

20   Miller, Stephen A. Cambone, Mark Jacobson, General Ricardo Sanchez, Lieutenant Colonel Jerry

21   Phillabaum, Brigadier General Janis L. Karpinski, Colonel Thomas M. Pappas, Lieutenant Colonel

22   Steven L. Jordan, Major David W. DiNenna, Sr., CPT Donald J. Reese, Major General Barbara

23   Fast, Maj. General Walter Wojdakowski, First Lieutenant Lewis C. Raeder, Sergeant Major Marc

24   Emerson, First Sergeant Brian G. Lipinski, Sergeant First Class Shannon K. Snider, Specialist

25   Sabrina Harman, Sergeant Javal S. Davis, Specialist Charles A. Graner, Jr., Staff Sgt. Ivan L.

26   Frederick II, 800th MP Brigade S-4 Major Green, Lieutenant Colonel James O'Hare, Lieutenant

27   Gary Maddocks, Specialist Jeremy Sivits, PFC Lynndie R. England, Captain Carolyn A. Wood,

28

1  Spec. Megan M. Ambuhl, Master Sgt. Lisa Girman, Scott McKenzie, SFC Tracey E. Perkins, Lt.

2  Jack M. Saville, Sgt. Reggie Martinez, and SPC Terry Bowman.

3        Further discovery and investigation is needed to ascertain whether the following persons

4  also participated in the conspiracy and illegal rackeetering activity: CPL Brottomesso, CPT

5  Chamorro, CPT McNealkidd, CPT Thompson, CW2 Graham, CW2 Rivas, CW2 Rumminger, MAJ

6  Price, PFC Banks, PFC Stumpf, PFC Williams, SFC Brokaw, SFC Cecil, SFC Johnson, SFC

7  Roberts, SFC Seija, SFC Yeske, SGT Brown, SGT Chan, SGT DeLaRosa, SGT Dennis, SGT

8  Eckroth, SGT Garcia, SGT Gouldner, SGT Hernandez, SGT Hill, SGT Kasse, SGT Knuth, SGT

9  Komarek, SGT Laursen, SGT Lee, SGT Monserate, SGT Moore, SGT Provance, SGT

10 Siegenthaler, SGT Stoltzman, SGT Yager, SGT Yi, SPC Blalock, SPC Blalock, SPC Borden, SPC

11 Breitman, SPC Caudill, SPC Chavarna, SPC Chavarrla, SPC Clardy, SPC Cruz, SPC DeLaRosa,

12 SPC Delgado, SPC Drown, SPC Ellis, SPC Forcash, SPC Garhart, SPC Gilchrist, SPC Griffin,SPC

13 Harris, SPC Heidenreich, SPC Janes, SPC Johnson, SPC Kersey, SPC Ketzer, SPC Langlanese,

14 SPC Mitchell, SPC Monath, SPC Nelson, SPC Pazdersky, SPC Porter, SPC Rivera, SPC Rush,

15 SPC Schlegal, SPC Shepherd, SPC Son, SPC Spencer, SPC Travise, SPC Walker, SPC Webster,

16 SPC Wong, SPC Zawacki,SSG Aston, SSG Blumenburg, SSG Burgess, SSG Henderson, SSG

17 Klesowitch, SSG Labonte, SSG Neal, SSG Schuster, SSG Strothenke, SSG Swiderski, SSG

18 Williams, SSG Yusufoff, and SSG Zambito.

19     **4. List the alleged victims and state how each victim was allegedly injured.**

20       Victims who have suffered RICO injuries include Plaintiff Sami Abbas Majdel Al Rawi

21 ("Plaintiff Sami"), a 56-year old Iraqi citizen, residing at Bhagdad – Amirya – PL636, St 74, House

22 No. 19, Bhagdad, Iraq.  He owns and manages a company in Baghdad that had entered into a

23 number of reconstruction contracts with the United States government.  On March 1, 2004, Plaintiff

24 Sami was arrested and detained at the Baghdad International Airport Prison, together with his four

25 sons.  Plaintiff Sami was tortured and otherwise mistreated by the Defendants and their co-

26 conspirators.  Plaintiff Sami was released without charge on March 6, 2004.  At the time of his

27 arrest, Plaintiff Sami had in his possession $65,750 and 15,350,000 Iraqi dinars, as well as other

28

1   valuables. The Torture Conspirators wrongfully confiscated and kept this money and property

2   following Plaintiff Sami's arrest.

3           Victims who have suffered RICO-injuries include Plaintiff Ahmed ("Plaintiff Ahmed"), an

4   Iraqi released without charge after five months of detention in Abu Ghraib Prison, Tent No. 7,

5   Camp No. 3. His prison number was No. 154120. Plaintiff Ahmed was tortured and otherwise

6   mistreated by the Defendants and their co-conspirators. Plaintiff Ahmed also suffered property

7   losses as a result of actions by the Torture Conspirators. They destroyed his house, and took

8   $3,200 in cash, $1,500 worth of gold, and jewelry and other property.

9           Victims who have suffered RICO injuries include Plaintiff Neisef ("Plaintiff Neisef"), an

10  Iraqi who was detained for seven months in Abu Ghraib Prison, Tent No. 7, Camp No. 3, and for

11  five months in Buka Prison. Plaintiff Neisef was tortured and otherwise mistreated by the

12  Defendants and their co-conspirators. Plaintiff Neisef suffered property losses as a result of actions

13  by the Torture Conspirators. They damaged his house, took $6,000 in cash, $1,000 worth of gold

14  and jewelry.

15          Victims who suffered RICO injuries also include the class known as Plaintiffs John and

16  Jane Does Nos. 3 – 500, which are persons who (a) have been forcibly detained in prisons or

17  facilities in or around Iraq subsequent to the fall of the Hussein regime; (b) have been subjected to

18  conditions and abuses that violate United States domestic law, international treaties, and norms of

19  customary international humanitarian and human rights law; and (c) have suffered injuries to their

20  properties and businesses as a result of those conditions and abuses. (This Class shall hereinafter

21  be known as the "RICO Class.")

22          The Torture Conspirators have caused extensive damage to certain Plaintiffs' businesses

23  and properties, including, upon information and belief, putative RICO Class Members' businesses

24  and properties located in the United States.

25          In addition to the victims who suffered RICO injuries, there are many victims of the Torture

26  Conspiracy who lost their lives or who survived but who were permanently physically and mentally

27  harmed by the torture. These include, but are not limited to, the persons identified as murdered in

28  response to Question No. 5, Amjed Isail Waleed, Hiadar Saber Abed Miktub-Aboodi, Huessin

RICO CASE STATEMENT          - 6 -       Case No. 04cv1143 R (NLS)

1    Mohssein Al-Zayiadi, Kasim Medhaddi Hilas, Mohanded Juma, Mustafa Jassim, Shalan Said

2    Alsharoni, Abd Alwhab Youss, Asad Hamza Hanfosh, Nori Samier Gunbar Al-Yasseri, Thaar

3    Salman Dawod, Ameen Sa'eed Al-Sheikh, and Abdou Hussain Saad Faleh, plaintiffs, and the

4    putative class of plaintiffs.  Plaintiffs reserve the right to conduct discovery to ascertain whether

5    these additional victims also suffered RICO injuries in addition to being deprived of life and/or

6    physical and mental health.

7        **5.  Describe in detail the pattern of racketeering activities or collection of unlawful**

8    **debts alleged for each RICO claim.  The description of the pattern of racketeering shall**

9    **include the following information:**

10           **(a)  List the alleged predicate acts and the specific statutes that were allegedly**

11   **violated.**

12       Plaintiffs allege that Defendant Titan, CACI Corporate Defendants and the Individual

13   Defendants, together with the co-conspiring government officials, engaged in a systematic and

14   extensive series of illegal acts that formed a pattern and practice of racketeering activity.  The

15   pattern and practice of racketeering activities included, but was not limited to, kidnapping, assault

16   including rape, acts and threats of murder, and murder.

17       Statutes violated include, among others, California Code Cal. Penal Code §§ 187-199

18   (homicide); 207-210 (kidnapping); 211-215 (robbery); 217.1-219.3 (attempts to kill); 261-269

19   (rape, abduction, carnal abuse of children, and seduction); 311-312.7 (obscene matter); 422-422.1

20   (criminal threats); United States Code, Title 18, U.S.C. § 1510 (relating to the obstruction of

21   criminal investigations), § 1951 (relating to interference with commerce, robbery, or extortion), §

22   1952 (relating to racketeering), § 1958 (relating to use of interstate commerce facilities in the

23   commission of murder-for-hire), §§ 2251-2252 and 2260 (relating to sexual exploitation of

24   children) and § 2315 (relating to interstate transportation of stolen property); Article 23 of the

25   Transitional Administrative Law, and Iraqi laws in force under Coalition Provisional Authority

26   Regulation No. 1, including Iraqi Penal Code of 1968 and the Criminal Procedure Code of 1972,

27   which include laws prohibiting murder, attempted murder, and robbery.

28

1       (b) **Provide the date of each predicate act, the participants in each predicate act,**

2 **and a description of the facts constituting each predicate act.**

3       On or about May 11, 2003, persons yet to be identified murdered Hussein Awad Al-Juwadi,

4 a male detainee being held in Bhadgdad, Iraq.

5       On or about June 6, 2003, persons yet to be identified murdered Naem Sadoon Htab, a male

6 Iraqi being detained in Nasyrah, Iraq, by strangling him until he died.

7       On or about June 13, 2003, persons yet to be identified murdered Dilar Dababa, a male

8 detainee being held at a classified interrogation facility in Bagdad known as Camp Cropper. The

9 murder was accomplished by blows to the head, which were described in the death certificate as

10 "closed head injury with a cortical brain contusion and subdural hematoma."

11       On or about August 22, 2003, persons yet to be identified murdered Tariq Zaid Mohamded,

12 a detainee in Iraq.

13       On or about November 4, 2003, persons yet to be identified, including but not limited to

14 persons who worked with the Special Forces and Navy SEALS, murdered Manadel Al-Jamadi, an

15 Iraqi male detained in Abu Ghraib prison. The murder was described in the death certificate as

16 accomplished by "blunt force injuries complicated by compromised respiration."

17       On or about November 20, 2003, persons yet to be identified murdered an Iraqi named

18 Jamadi. The murder occurred in Abu Ghraib prison. Subsequent to the murder, persons yet to be

19 identified tried to obscure the murder and portray it as death by natural causes by placing an IV into

20 his arm.

21       On or about November 26, 2003, persons yet to be identified murdered Maj. Gen. Abid

22 Hamed Mowhoush by shoving him head-first into a sleeping bag and smothering him. The murder

23 occurred in Al Qaim, Iraq. The death certificate describes the murder as accomplished by

24 "asphyxia due to smothering and chest compression."

25       On or about January 9, 2004, persons yet to be identified murdered Abdul Jaleel, a 47-year

26 old Iraqi male. He was murdered at the Forward Operating Bases Rifles Bases, Al Asad, Iraq. His

27 body was discovered shackled to the door of his cell with his hands over his head and gagged. The

28 death certificate describes the murder as accomplished by "blunt force injuries and asphyxia."

1    On or about April 5, 2004, persons yet to be identified murdered Fashad Mohamad, a male
2  detainee being held at an unknown location in Iraq.

3    On or about April 14, 2004, persons yet to be identified murdered Mousa Farhan.  The
4  murder occurred in Abu Ghraib prison.

5    On or about April 28, 2004, persons yet to be identified murdered Fahin Ali Gumas, a 44-
6  year old Iraqi being detained in Baghdad, Iraq.  The death certificate describes the murder as
7  accomplished by "multiple gunshot wounds."

8    On or about June 28, 2003, five persons yet to be identified took a male detainee Saleh into
9  an interrogation booth at the Abu Ghraib prison.  One of the persons pulled out a gun and fired at
10  Saleh from several yards away. The attempted murder occurred in Abu Ghraib prison.

11    On or around mid-December, 2003, Sgt. Cardona and other persons yet be identified
12  threatened Ballendia Sadawi Mohammed with death by loosing dogs on him.  The threat occurred
13  at the Abu Ghraib prison.

14    On or about December 12, 2003, persons yet to be identified threatened a naked Iraqi
15  detainee with death by loosing a dog on him.  The threat of murder occurred in Abu Ghraib prison.

16    On or around early January, 2004, Sgt. Cardona and other persons yet to be identified
17  threatened a yet-to-be identified person with death by bringing a dog to an interrogation booth.

18    On or before May 21, 2004, an unknown employee of Defendant Titan and other persons
19  yet to be identified threatened persons with death and/or severe bodily harm, and forcibly stripped
20  them, handcuffed them, and forced them to assume sexual positions.

21    On a date that has not yet been determined, SPC Sabrina D. Harman and other persons yet
22  to be identified threatened a detained Iraqi with death by loosing dogs on him.  The attempted
23  murder occurred at the Abu Ghraib prison.

24    On a date that has yet to be determined, persons who have yet to be identified videotaped
25  the sexual molestation and rape of a 15-year old boy.

26    On dates that have not yet been determined, SPC Sabrina D. Harman and other persons yet
27  to be determined caused to be transported obscene materials.

28

RICO CASE STATEMENT          - 9 -        Case No. 04cv1143 R (NLS)

1  On or around winter 2003-2004, persons yet to be identified kidnapped the sixteen-year-old

2  son of an Abu Ghraib detainee, stripped the boy naked, threw him in the back of an open truck,

3  drove the truck around in the cold night air, splattered him with mud, and then brought him before

4  his father. The detainee thereafter promised to tell interrogators everything he knew.

5  At a date not yet determined, a translator identified by the media as "Abu Hamid" raped a

6  teenage Iraqi boy while a female who has not yet been identified photographed the rape.

7  At a date not yet determined, persons not yet identified videotaped Iraqi boys being

8  sodomized at the Abu Ghraib prison.

9  On or around November 2003, persons not yet identified imported obscene materials into

10  the United States, including but not limited to pictures of detainees in sexual positions at Abu

11  Ghraib prison.

12  **(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud,**

13  **or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be**

14  **stated with particularity." Fed. R. Civ. P. 9(b).  Identify the time, place and substance of the**

15  **alleged misrepresentations and the identity of persons to whom and by whom the alleged**

16  **misrepresentations were made.**

17  The RICO claims are not based upon the predicate offenses of wire fraud, mail fraud, or

18  fraud in the sale of securities.

19  **(d) State whether there has been a criminal conviction for violation of any**

20  **predicate act.**

21  To date, one participant in the Torture Conspiracy has been convicted.  He pleaded guilty

22  and was sentenced to one year in prison.

23  **(e) State whether civil litigation has resulted in a judgment with regard to any**

24  **predicate act.**

25  No.

26  **(f) Describe how the predicate act forms a "pattern of racketeering activity."**

27  The predicate acts of murder, attempted murder and threats of murder are part of a series of

28  acts beginning as early as January 2002 and continuing to date.  These predicate RICO acts, as well

1   as numerous other acts of torture were and are designed to intimidate and coerce hundreds of

2   detainees into providing a continuing stream of "intelligence."

3        Defendants and the co-conspiring government officials jointly operate six "intelligence"

4   facilities in Iraq.  These facilities are known as Talil Airbase, Bushmaster, Bucca, Dogwood,

5   Cropper and Abu Ghraib (which is also spelled as Abu Ghurayb).

6        At each of these facilities, and perhaps at other locations yet to be identified, Defendants

7   and the co-conspiring government officials operated an intensive interrogation, debriefing and

8   intelligence gathering program designed to screen and identify detainees who had valuable

9   "intelligence."

10        Defendants and the co-conspiring government officials formed "tiger teams" and "break

11   teams."  These teams typically consisted of an Interrogator employed by either the CACI Corporate

12   Defendants or the United States, a Translator employed by Defendant Titan or the United States,

13   and an Analyst employed by either the CACI Corporate Defendants, Defendant Titan or the United

14   States.

15        These "tiger teams" and "break teams" interrogated detainees in interrogation booths.  After

16   the completion of an interrogation session, the "intelligence" obtained from the detainee was

17   inputted into a database known as the Interrogation and Reporting Database.  This Database was

18   used to generate a "daily interrogation rollup" as well as other statistical reports that reflected the

19   number of interrogations and the amount of information obtained from the interrogations.

20        Defendants and the co-conspiring government officials ("Torture Conspirators") did not

21   conduct the interrogations in a manner that complied with the law.  Instead, the Torture

22   Conspirators repeatedly and routinely engaged in a series of unlawful acts, including predicate

23   RICO acts such of kidnapping, murdering, and threatening to murder detainees and otherwise

24   torturing and mistreating the detainees.

25        **(g) State whether the alleged predicate acts relate to each other as part of a**

26   **common plan.  If so, describe the relationship and common plan in detail.**

27        As described in the Complaint, acting together, Defendants Titan, CACI Corporate

28   Defendants, Stefanowicz, Israel, and Nakhla conspired with certain United States officials to

1  engage in a series of wrongful and illegal acts, including but not limited to, threatening to murder,

2  murder, torture or other cruel, inhuman or degrading treatment, arbitrary arrest and detention,

3  assault and battery, false imprisonment and intentional interference with religious practices.

4    These predicate acts were all part and parcel of a common plan. The plan's purpose was to

5  inflate artificially by these acts the demand for interrogation and other related services such as

6  interpretation and translation. By designing and implementing this plan, Defendants expected to,

7  and did, profit and gain a competitive advantage from this artificially-inflated demand for such

8  services and from additional government contracts awarded to them.

9    The alleged predicate acts all relate to each other as part of this common plan. These acts

10  are part of a series of wrongful and illegal acts that are all part of the common plan to intimidate

11  and coerce detainees into providing interrogators with "intelligence" as a means to cease the

12  physical and mental harm being done to them. The "intelligence" obtained by these illegal and

13  unlawful means was disseminated both by means of the Interrogation and Reporting Database and

14  otherwise. The Torture Conspirators, relying on the existence of "intelligence" obtained by

15  unlawful means, successfully created additional demand for the Interrogation Services being

16  marketed and sold by the Corporate Defendants.

17    The murders, kidnappings, robberies, threats of murder, and obscene acts identified above

18  are part of the series of wrongful acts all designed to intimidate and coerce detainees into providing

19  "intelligence." To date, based on the United States' preliminary investigations, there are already

20  more than 94 instances of theft, physical assault, sexual assault and murder by the Torture

21  Conspirators.

22    6. **Describe in detail the alleged "enterprise" for each RICO claim. A description of**

23  **the enterprise shall include the following:**

24    (a) **State the name of the individuals, partnerships, corporations, associations, or**

25  **other legal entities, which allegedly constitute the enterprise.**

26    The RICO Enterprise consists of an association-in-fact between Defendant Titan, the CACI

27  Corporate Defendants, Defendants Nakhla, Stefanowicz and Israel, and the co-conspiring

28  government officials.

1        (b) **A description of the structure, purpose, function and course of conduct of the**

2  **enterprise.**

3        The Enterprise is an association-in-fact formed by the CACI Corporate Defendants,

4  Defendant Titan, the individual Defendants and certain government officials. The central purpose

5  of the Enterprise is to increase the United States' demand for the non-governmental professionals to

6  assist the United States' intelligence-gathering efforts.

7        To achieve that end, the Enterprise seeks to prove the capacity to obtain "intelligence" from

8  detained persons. To accomplish that purpose in Iraq, the Enterprise organized itself into a series

9  of interrogation teams that function as units. The personnel assigned to each interrogation team

10  shifts over time, but typically includes a person designated as an Interrogator, a person designated

11  as a Translator, and a person designated as an Analyst. On occasion, an interrogation team may

12  include more than three persons.

13        The Enterprise obtained "intelligence" from detainees by both lawful and unlawful means.

14  The Enterprise is an ongoing organization that continues to function as a unit and engage in activity

15  separate and apart from the criminal and illegal activity. The Enterprise operates in locations in

16  Iraq, other foreign locations, and in the United States. The Enterprise is managed and operated by

17  executives from the CACI Corporate Defendants, Defendant Titan, and by certain government

18  officials, including military officials.

19        The Enterprise conducts legitimate business in Iraq, other foreign countries, and in the

20  United States. For example, discovery likely will reveal that in some instances the Enterprise

21  conducted certain interrogations in Iraq in a lawful manner. Note, however, that the overarching

22  goal of the Enterprise (to obtain more government contracts for Interrogation Services) may be

23  illegal to the extent that the law of government contracts prohibits and prevents the United States

24  from hiring outside contractors to perform uniquely-governmental functions such as intelligence

25  gathering.

26        (c) **A statement of whether any defendants are employees, officers or directors of**

27  **the alleged enterprise.**

28

1    Defendant Nakhla was an employee of Defendant Titan, one of the entities comprising the

2    Enterprise.  Defendant Israel was an agent, constructive employee and/or subcontractor of

3    Defendant Titan, one of the entities comprising the Enterprise.  Defendant Stefanowicz is an

4    employee of the CACI Corporate Defendants, one of the entities comprising the Enterprise.

5    Defendant Titan and the CACI Corporate Defendants are corporate entities that, together

6    with certain government officials, comprise the Enterprise.

7    **(d) A statement of whether any defendants are associated with the alleged**

8    **enterprise.**

9    As described above, all of the Defendants were associated with the Enterprise during the

10   events alleged in the Second Amended Complaint.  At present, Defendants Nakhla and Israel do not

11   appear to be employed or subcontracted by any of the Enterprise entities.

12   **(e) A statement of whether plaintiff is alleging that the defendants are individuals**

13   **or entities separate from the alleged enterprise or that the defendants are the enterprise itself,**

14   **or members of the enterprise.**

15   Plaintiffs allege that Defendant Titan and CACI Corporate Defendants, together with the

16   individual Defendants and certain government officials are members of, and have an association-in-

17   fact that is, the Enterprise.

18   **(f) If any defendants are alleged to be the enterprise itself, or members of the**

19   **enterprise, an explanation of whether such defendants are perpetrators, passive instruments,**

20   **or victims of the alleged racketeering activity.**

21   Plaintiffs allege that Defendant Titan, CACI Corporate Defendants, and the individual

22   Defendants are all members of the association-in-fact that is the Enterprise.

23   Defendant Titan, CACI Corporate Defendants, and the individual Defendants are all

24   members of the Torture Conspiracy and are perpetrators of the alleged racketeering activity.

25   7.  **State and describe in detail whether plaintiff is alleging that the pattern of**

26   **racketeering activity and the enterprise are separate or have merged into one entity.**

27   Plaintiffs allege that the pattern of racketeering activity ("the Torture Conspiracy") and the

28   Enterprise are separate and apart.  Plaintiffs allege that the racketeering activity was committed in

RICO CASE STATEMENT          - 14 -     Case No. 04cv1143 R (NLS)

1   furtherance of the business of the Enterprise but did not constitute entirety the business of the

2   Enterprise.  The Enterprise is an ongoing association-in-fact that continues to function as a unit and

3   appears to be engaging in lawful activity separate and apart from the criminal and illegal activity of

4   the Torture Conspiracy.

5       **8.   Describe the alleged relationship between the activities of the enterprise and the**

6   **pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual**

7   **daily activities of the enterprise, if at all.**

8       The Enterprise operated both legally and illegally to obtain intelligence from detainees and

9   to disseminate that intelligence to others via the Interrogation and Reporting Database and other

10   means.  To the extent discovery reveals that an Enterprise "team" conducted an interrogation in a

11   lawful manner, and recorded intelligence obtained from that interrogation in the Database, the

12   Enterprise's daily activities may have been lawful.  However, to the extent an Enterprise "team"

13   conducted an interrogation in an unlawful manner, the Enterprise is part of the Torture Conspiracy.

14   Thus, the Torture Conspirators' illegal racketeering activities are a subset, albeit a large subset, of

15   the Enterprise's overall activities.

16       **9.   Describe what benefits, if any, the alleged enterprise receives from the alleged**

17   **pattern of racketeering.**

18       The Enterprise received significant financial benefits from the pattern of racketeering. The

19   Corporate Defendant members of the Enterprise received millions of dollars over and above what

20   they otherwise would have received in the absence of the racketeering activity.  In addition, the

21   Corporate Defendant members received government contracts providing future revenue streams

22   that they would not have otherwise received in the absence of the racketeering activity.

23       The Individual Defendant members of the Enterprise received thousands of dollars over and

24   above what they otherwise would have received in the absence of the racketeering activity.

25       The government official members of the Enterprise received financial incentives,

26   institutional praise and recognition (including but not limited to promotions and pay raises), and

27   power over and above what they would have received in the absence of the racketeering activity.

28

10. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

Plaintiffs allege that the activities of the Enterprise had a substantial effect on interstate and foreign commerce.

The Enterprise impacted interstate and foreign commerce by permitting Defendant Titan and CACI Corporate Defendants to receive more United States government contracts than they would otherwise have received. This impacted competitors and others in commerce.

The Enterprise's ongoing pattern and practice of illegal acts was designed to, and did, inflate artificially the demand for "intelligence" and the resulting demand for independent contractors' Interrogation Services. The Enterprise distorted the United States' overall investment in intelligence-gathering exercises and caused the expenditure of United States funds that should not have been spent. This spending impacts interstate commerce.

The Enterprise interfered with the United States' hiring patterns by causing the United States to forego adding personnel to government payroll. These failures to hire impact interstate commerce.

11. **If the complaint alleges a violation of 18 U.S.C. 1962(a), provide the following:**

(a) **State who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt.**

Plaintiffs allege that the Defendant Titan, CACI Corporate Defendants, and the individual Defendants received the income derived from the pattern of racketeering activity.

(b) **Describe the use or investment of such income.**

Plaintiffs allege that the income received from the pattern of racketeering was used by Defendant Titan and CACI Corporate Defendants to invest in and operate the ongoing operations of the corporations, including but not limited to those portions of the corporate operations that were members of the Enterprise and the Torture Conspiracy.

12. **If the complaint alleges a violation of 18 U.S.C. 1962(b), describe in detail the acquisition of maintenance of any interest in or control of the alleged enterprise.**

1    Plaintiffs do not allege a violation of this subsection.  Plaintiffs reserve the right to amend

2    this statement if discovery reveals violation of this subsection.

3    13. **If the complaint alleges a violation of 18 U.S.C. 1962(c), provide the following:**

4    (a) **State who is employed by or associated with the alleged enterprise.**

5    The Enterprise consists of an association-in-fact comprised of Defendant Titan, CACI

6    Corporate Defendants, Defendant Nakhla, Defendant Israel and Defendant Stefanowicz, as well as

7    certain government officials.  All defendants either are or were employed by an entity that

8    comprises the Enterprise.

9    (b) **State whether the same entity is both the liable "person" and the "enterprise"**

10   **under 18 U.S.C. 1962(c).**

11   Plaintiffs do not allege that the same entity is both the liable "person" and the "enterprise"

12   under § 1962(c).

13   14. **If the complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the facts**

14   **showing the existence of the alleged conspiracy.**

15   The facts that show the existence of the alleged conspiracy include, but are not limited to,

16   the following:

17   First, the corporate Defendants openly recruited in California, Virginia and other locations

18   throughout the United States to hire Interrogators, Translators, and Analysts to work in Iraq.  The

19   corporate Defendants publicized that they would only hire persons acceptable to government

20   officials.

21   For example, a Team Titan postings sought "male U.S. citizens" and revealed that

22   applicants "must undergo a favorable U.S. Army Counterintelligence screening interview."

23   Defendant Titan advertised for employees "to work 12 hour shifts and in excess of 60-hour weeks

24   in order to provide continuous contract linguist support that this 24x7 operation requires." *See*

25   FAC Exhibit B, job description OAT730.  Defendant Titan employees "work as part of a civil-

26   military team in an unstructured environment; [they] live and work in a harsh environment." *See*

27   First Amended Complaint ("FAC") Exhibit B, job description TOSG26.  They are expected to

28

RICO CASE STATEMENT          - 17 -          Case No. 04cv1143 R (NLS)

1   "[i]dentify and extract information components meeting military information requirement list

2   criteria, and to "[p]rovide input to reports" *See* FAC Exhibit B, job description OAT730.

3        The CACI Corporate Defendants recruited for, among other persons, "Interrogators" and "Jr

4   CI Agent[s]," who "[c]onduct[] interrogations of detainees." *See* FAC Exhibit C, job descriptions

5   BZSG224 and BZSG191.  CACI Corporate Defendants also sought, among other persons,

6   "Intelligence Analysts" who:

7
8
9
10
> Provides intelligence analytical support to the interrogation team
> during development and execution of the interrogation plan/cycle.
> Interfaces with higher, lower and adjacent intelligence organizations
> to *fully prepare interrogation team for exploitation of detainees*, as
> well as preparing post interrogation analytical products/assessments
> that support further targeting efforts, source development and
> analysis of the threat.

11
12   (Emphasis added.) *See* FAC Exhibit C, job description BZSG192.

13        Second, the individual Defendants and other Titan and CACI employees worked hand-in-

14   hand with government officials on "tiger teams" and "break teams" in Iraq.  Attached as Exhibit A

15   is an organization chart that demonstrates the composition of the teams working in the Abu Ghraib

16   prison in Iraq.

17        Third, it is beyond dispute that these teams engaged in illegal conduct.  At present, the

18   United States' initial investigative efforts have revealed that there are at least 94 cases in which

19   detainees were tortured, killed, sexually assaulted or robbed.

20        Fourth, plaintiffs hereby incorporate by reference the additional facts alleged in the Third

21   Amended Complaint that establish the existence of the Torture Conspiracy.

22        **15. Describe the alleged injury to business or property.**

23        These injuries are described in detail above in response to Question No. 3.  Plaintiff Sami,

24   Plaintiff Ahmed, Plaintiff Neisef and Putative RICO Class members have been injured in their

25   business and/or property in amounts to be determined at trial by the ongoing pattern and practice of

26   illegal acts by the Torture Conspirators.

27        **16. Describe the direct causal relationship between the alleged injury and the violation**

28   **of the RICO statute.**

1    But for the existence of and wrongful acts by the Torture Conspirators, Plaintiffs Saleh,

2    Sami, Ahmed, Neisef and Putative RICO Class members would not have been injured, either

3    physically or financially.  There is a direct causal relationship between the injury and the pattern of

4    racketeering activity.

5    17. **List the damages sustained by reason of the violation of 18 U.S.C. 1962, indicating**

6    **the amount for which each defendant is allegedly liable.**

7    Plaintiffs and members of the class have sustained damages to their businesses and/or

8    property in amounts to be determined at trial.

9    18. **List all other federal causes of action, if any, and provide the relevant statute**

10    **numbers.**

11    Plaintiffs allege that the acts described in the Complaint constitute summary execution,

12    torture, cruel, inhuman or degrading treatment, enforced disappearance, arbitrary arrest and

13    detention, war crimes, and crimes against humanity in violation of the law of nations under the

14    Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated definite and specific customary

15    international law norms accepted by civilized nations and reflected, expressed, and defined in

16    multilateral treaties and other international instruments, international and domestic judicial

17    decisions, and other authorities.  Defendants are liable for said conduct directly and in so far as they

18    directed, ordered, confirmed, ratified, and/or conspired with certain government officials to commit

19    these violations.

20    Plaintiffs and putative Class Members were treated in a manner that violates the Religious

21    Land Use and Institutionalized Persons Act, 24 U.S.C. §2000cc-1 (hereinafter "RLUIPA").

22    Defendants acting under the color of the law of the United Stated intentionally imposed a

23    substantial burden on the Plaintiffs' and putative Class Members' exercise of their religious beliefs.

24    Plaintiffs and putative Class Members were tortured and otherwise mistreated in violation

25    of specific protections of the Third and Fourth Geneva Conventions.  Violations under the Geneva

26    Conventions are direct treaty violations, and are also violations of customary international law.

27    Defendants are liable for said conduct directly and in so far as they directed, ordered, confirmed,

28    ratified, and/or conspired to violate the Geneva Conventions.

1    Plaintiffs and putative Class Members were treated in a manner that violates the

2  Constitution of the United States and its Amendments.  Defendants intentionally, and with

3  deliberate disregard for any injury Plaintiffs and putative Class Members would suffer, deprived

4  Plaintiffs of life and liberty without due process of law.  Defendants were acting under the color of

5  the law of the United States when they deprived Plaintiffs of life and liberty without due process of

6  law.  Defendants' actions were accorded the color of the United States law because they were

7  conspiring with certain public officials, including certain military officials, and other persons acting

8  in an official capacity on behalf of the United States.

9    19. **List all pendent state claims, if any.**

10    Plaintiffs assert state claims of assault and battery, sexual assault and battery, wrongful

11  death, false imprisonment, intentional infliction of emotional distress, negligent hiring and

12  supervision, negligent infliction of emotional distress, conversion, and unjust enrichment.

13    20. **Provide any additional information that you feel would be helpful to the court in**

14  **processing your RICO claims.**

15    Plaintiffs will continue to supplement this RICO Statement with the fruits of additional

16  investigation.

17

18  DATED:  July 30, 2004

19

20

21

22

23

24

25

26

27

28

1

2

3

William J. Aceves (CA Bar # 151031)

4  225 Cedar Street
San Diego, CA  92101

5  Telephone:     (619) 515-1589
Facsimile:      (619) 696-9999

6  *Serving as Local Counsel Only*

7

8

9

10  Barbara Olshansky
Michael Ratner

11  Jeffrey Fogel
Jennifer Green

12  Judith Brown Chomsky
Jules Lobel

13  CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor

14  New York, NY 10012
Telephone:     (212) 614-6439

15  Facsimile:      (212) 614-6499

16

17  Joseph Margulies

18  Locke Bowman
MACARTHUR JUSTICE CENTER

19  UNIVERSITY OF CHICAGO LAW SCHOOL
1111 East 60th Street

20  Chicago, IL  60637
Telephone:     (773) 702-9560

21  Facsimile:      (773) 702-0771

22

23

24

25

26

27

28

Susan L. Burke (admitted *pro hac vice*)
Joyce S. Meyers
MONTGOMERY, MCCRACKEN,
     WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone:     (215) 772-7514
Facsimile:      (215) 772-7620

Shereef Hadi Akeel
MELAMED, DAILEY & AKEEL, P.C.
26611 Woodward Avenue
Huntington Woods, MI  48072-2026
Telephone:     (248) 591-5000
Facsimile:      (248) 541-9456

Susan Feathers
UNIVERSITY OF PENNSYLVANIA
     LAW SCHOOL
3400 Chestnut Street
Philadelphia, PA  19104-6204
Telephone:     (215) 898-0459

*Attorneys for Plaintiffs and Class Plaintiffs*

RICO CASE STATEMENT          - 21 -          Case No. 04cv1143 R (NLS)

# Exhibit A



JIDC Organization

23 Jan 04

HHC 323rd PERSTAT

| Detached personnel: | |
|---|---|
| SGT Goeliner | (JTF 121) |
| SPC Zawadzi | (JTF 121) |
| SFC Seija | (320th) |
| SPC Harris | (Medical) |

Soldiers : 97
CACI: 32
Linguists: 20
Total: 149

Tiger Teams:  18 out of 21 teams conducting interrogations

**CERTIFICATE OF SERVICE**

1

2

3     I, Jonathan H. Pyle, do hereby certify that on the 30th day of July 2004, I caused a true and

4 correct copy of the foregoing Plaintiffs' RICO Case Statement Filed Pursuant to Local Rule 11.1 to

5 be served via U.S. First Class Mail, postage prepaid, upon the following individuals at the addresses

6 indicated:

7 F. WHITTEN PETERS                    WILLIAM E. GRAUER
  WILLIAMS AND CONNOLLY          COOLEY GODWARD
8 725 12TH STREET NORTH WEST      4401 EASTGATE MALL
  WASHINGTON, DC 20005              SAN DIEGO, CA 92121-9109
9

10 *Counsel for Defendant Titan Corp.*       *Counsel for Defendant Titan Corp.*

11 ADEL L. NAKHLA                     J. WILLIAM KOEGEL JR.
  9324 FROSTBURG WAY            STEPTOE & JOHNSON LLP
12 MONTGOMERY VILLAGE MD 20886-1450   1330 CONNECTICUT AVENUE, NW
                                    WASHINGTON, DC 20036
13 *Defendant*

14                                   *Counsel for CACI Corporate Defendants*

JOHN B. ISRAEL                     CHRISTOPHER DARDEN
15 17323 MOUNT STEPHEN AVE       LAW OFFICES OF CHRISTOPHER A.
  SANTA CLARITA CA 91387-3167     DARDEN & ASSOCIATES, INC.
16                                    5757 W. CENTURY BLVD., SUITE 700
  *Defendant*                         LOS ANGELES, CA 90045
17
                                   *Counsel for Defendant John B. Israel*

18 HENRY E. HOCKEIMER JR.
  HANGLEY ARONCHICK SEGAL &
19 PUDLIN, P.C.
  ONE LOGAN SQUARE
20 27TH FLOOR
  PHILADELPHIA, PA 19103-6933
21
  *Counsel for Defendant Steven Stefanowicz*
22

23

24                           Jonathan H. Pyle (Pa. Bar ID #89887)
                          MONTGOMERY, MCCRACKEN,
25                         WALKER & RHOADS, LLP
                        123 South Broad Street
26                       Philadelphia, PA 19109
                        Telephone No.: (215) 772-1500
27                       Facsimile No.: (215) 772-7620

28

RICO CASE STATEMENT                 Case No. 04cv1143 R (NLS)